[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10692
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 8, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-21586-ASG

PEDRO INFANTE,

                                                            Plaintiff - Appellant,

versus

BANK OF AMERICA CORPORATION,
a Delaware corporation,

                                                            Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 8, 2012)

Before TJOFLAT, EDMONDSON and MARCUS, Circuit Judges.

PER CURIAM:

Plaintiff Pedro Infante appeals from the district court's dismissal of his action alleging fraud and rescission under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635, against defendant Bank of America Corporation ("BOA"). On appeal, Infante argues that the district court erred in granting BOA's motion to dismiss because: (1) his complaint pled fraud with sufficient particularity to satisfy the pleading requirements of federal law by alleging that BOA's agents misrepresented Infante's income on his loan application and concealed this fact by not giving Infante an opportunity to review the application; and (2) his complaint properly presented a present need for a declaration of his right to recision under the TILA. After thorough review, we affirm.

We review <u>de novo</u> a district court's decision to dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). <u>Am. United Life Ins. Co. v. Martinez</u>, 480 F.3d 1043, 1056-57 (11th Cir. 2007). The complaint is viewed in the light most favorable to the plaintiff, and all of the plaintiff's well-pleaded facts are accepted as true. <u>Id.</u> at 1057. Dismissal is not appropriate unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint. <u>Davila v. Delta Air Lines, Inc.</u>, 326 F.3d 1183, 1185 (11th Cir. 2003). However, a district court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts. <u>Id.</u>

The relevant background is this. Infante is the current owner of a parcel of property located in Coconut Grove, Florida ("the property"). In October of 2007, Infante closed on two mortgage loans whereby Countrywide Bank, FSB ("Countrywide"), a corporate entity that has since been purchased by BOA, agreed to finance the "construction of a residence and related improvement on the property" and to refinance the property. The first mortgage loan was for $1,462,500 ("first mortgage loan") and the second mortgage loan was for $195,000 ("second mortgage loan"). In order to obtain these loans, Infante submitted a loan application -- commonly referred to as a Uniform Residential Loan Application ("URLA") -- that required Infante to provide a variety of detailed information regarding his financial standing, such as net assets, income, and expenses. This application, which Infante swore contained true and correct information, reflected a monthly income of $35,416.00. However, Infante claims that his income at the time was only $15,522.28 and that BOA "inflated the true income figures to justify the loan and prepare the loan for future assignment or sale" and to induce Infante to "incur a loan obligation that the Defendant was fully aware that Plaintiff would ultimately be unable to pay." Infante also asserts that BOA neglected to make certain disclosures required by the TILA and that Infante is thus entitled to rescind the transactions at issue pursuant to the statute.

First, we are unpersuaded by Infante's claim that the district court erred in dismissing his fraud claim. Federal Rules of Civil Procedure 9(b) provides that in "alleging fraud . . . a party must state with particularity the circumstances constituting fraud." In order to do so, a plaintiff must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997)).

The crux of Infante's fraud claim is that "Defendant made misrepresentations in the [URLA] when it specifically knew that the representations as [they] pertain to the Plaintiff's income [were] false." In order to state a cause of action for fraudulent misrepresentation under Florida law, the relevant state law in this case, a plaintiff must adequately allege: (1) a false statement by the defendant concerning a material fact; (2) the defendant's knowledge that the representation was false; (3) that the representation was made by the defendant with the intent to induce another to act on it; and (4) that the plaintiff suffered a consequent injury in reliance on the

4

representation. Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985). A plaintiff's "[f]ailure to allege a specific element of fraud in a complaint is fatal when challenged by a motion to dismiss." Strack v. Fred Rawn Constr., Inc., 908 So. 2d 563, 565 (Fla. 4th DCA 2005) (affirming dismissal of fraud count with prejudice where plaintiff failed to allege all elements despite having been given multiple opportunities to do so).

Among other things, Infante's fraud claim fails to state a claim because his complaint fails to allege facts that, if proven, would render BOA liable for torts committed by Countrywide prior to its acquisition by BOA. Florida follows the traditional corporate law rule that where a corporation acquires 100% of another corporation's stock or assets, it "does not as a matter of law assume the liabilities of the prior business." Corporate Express Office Products, Inc. v. Phillips, 847 So. 2d 406, 412 (Fla. 2003). There are exceptions to the general rule, such as where: "(1) the successor expressly or impliedly assumes obligations of the predecessor; (2) the transaction is a de facto merger; (3) the successor is a mere continuation of the predecessor; or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor." Id. (quoting Bernard v. Kee Mfg. Co., 409 So. 2d 1047, 1049 (Fla. 1982)). However, in this case, Infante failed to allege any facts giving rise to the reasonable inference that BOA is liable for the pre-acquisition torts committed by

5

Countrywide. In fact, the only allegations in the complaint concerning the BOA-Countrywide transaction are that "Countrywide . . . is now owned by the Defendant" and that "Countrywide Bank, FSB was purchased by the Defendant." Because the burden is on Infante to make sufficient allegations of fraud, the district court properly concluded that these bare allegations, standing alone, are inadequate under federal pleading standards to give rise to an inference of a merger, a de facto merger, or any other corporate law principle that might impose liability on BOA for the fraud allegedly perpetrated by Countrywide. Accordingly, Infante's fraud claim fails.

Nor do we find any merit to Infante's argument that the district court erred in dismissing his TILA rescission claim. The TILA-based right to rescission does not apply to a "residential mortgage transaction." 15 U.S.C. § 1635(e)(1); see also 12 C.F.R. § 226.23(f)(1). A "residential mortgage transaction" is defined in the statute as:

> a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.

15 U.S.C. § 1602(w).

While the statute does not expressly address the applicability of TILA to multipurpose loans -- for example, loans that are used to both construct a dwelling and refinance the property upon which the dwelling is built -- the pertinent Federal Reserve Board's Official Staff Interpretations[1] note that

> [a] transaction meets the definition of this section if any part of the loan proceeds will be used to finance the acquisition or initial construction of the consumer's principal dwelling. For example, a transaction to finance the initial construction of the consumer's principal dwelling is a residential mortgage transaction even if a portion of the funds will be disbursed directly to the consumer or used to satisfy a loan for the purchase of the land on which the dwelling will be built.

12 C.F.R. pt. 226, Supp. I, Subpart A, § 226.2(a)(24)-6.

In this case, Infante's claim for rescission of the first mortgage loan fails because some of the loan proceeds were used to finance the cost of constructing Infante's residence. Although Infante conclusorily alleges that the purpose of the mortgage loans "was a refinance and not a residential mortgage for acquisition or initial construction of a dwelling," the more specific contents of the controlling signed loan documents unequivocally establish the fact that the first mortgage loan proceeds were disbursed -- at least in part -- to finance the construction of Infante's

---

[1]The official staff interpretations are binding "unless demonstrably irrational." Johnson v. Fleet Finance, Inc., 4 F.3d 946, 949 (11th Cir. 1993) (citing Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980)).

principal dwelling.[2]  Specifically, the document provides that "Borrower, lender, and a contractor are entering into a Construction Loan Agreement . . . under which Lender has agreed to extend to Borrower a loan . . . to finance Borrower's construction of a residence and related improvements on the Property.").  As a result, the first mortgage loan constitutes a "residential mortgage transaction" and is exempt from TILA's rescission provisions.  Accordingly, we affirm.

**AFFIRMED.**

---

[2] Because these loan documents are central to the claims and referred to and relied on throughout the operative complaint, they were appropriately considered on BOA's motion to dismiss.  See Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal").  Moreover, because these documents contradict the general and conclusory allegations of the complaint, these documents govern.  Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009).